UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

VUYANI ISAIAH OGLE,

      Plaintiff,

          v.                                                      CAUSE NO. 1:23-CV-108-HAB-SLC

DAVID GLADIEUX, ALAN COOK,
MARK SICKAFOOSE, TROY
HERSHBERGER, DAVID BUTLER, LT.
SANDERSON, CPL. THOMAS,
WACASEY, DUNNING, KAUFFMAN,
BUWLBY, ADAM BUTLER, RICHWINE,
ALLEN COUNTY JAIL MAINTENCE
CREW, GRANT,

      Defendants.

OPINION AND ORDER

Vuyani Isaiah Ogle, a prisoner without a lawyer, filed a complaint about the

conditions of confinement he was held in while serving consequences for a disciplinary

violation at the Allen County Jail. ECF 18. "A document filed *pro se* is to be liberally

construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C.

§ 1915A, the court must review the merits of a prisoner complaint and dismiss it if the

action is frivolous or malicious, fails to state a claim upon which relief may be granted,

or seeks monetary relief against a defendant who is immune from such relief.

Ogle filed this lawsuit about the conditions of the cellblocks he was held in from November 18, 2022, through February 7, 2023, while serving consequences for a disciplinary violation. ECF 18 at 2. He spent 40 days in "the Hole," before he "leveled up" and spent 42 days in a segregation unit. ECF 18-2 at 6. He describes the conditions as "horrid and unbelievable" but provides only a few facts to describe what the conditions were like. ECF 18 at 2.

Specifically, Ogle complains that in the Hole, there was inadequate ventilation that caused him migraines, dizziness, lightheadedness, sleep deprivation, and hallucinations. ECF 18-2 at 7. He was not provided with adequate cleaning supplies, which resulted in stomachaches, flu-like symptoms, and poor physical health. *Id.* He says the conditions were hazardous; he reports that he smelled gas in the vents and once a light blew up. *Id.* He contends that there are water leaks and shutdowns, and the water is contaminated. *Id.* Finally, he complains that the cells do not have emergency call buttons, and there is insufficient dayroom space per inmate. *Id.* Ogle alleges that the segregation unit suffers from the same problems, and he adds that the emergency exit is not up to code because there is an unilluminated sign and a broken door. *Id.*

Ogle continues that because these cellbocks do not house inmates in general population, there is no regulated janitor or a designated trusty—an inmate whose job it is to clean areas of a cellblock. ECF 18-2 at 7. Instead, the Block C.O. is supposed to provide sanitizer for the toilets and the sinks. *Id.* at 6. Each day, he is supposed to spray the tables and chairs in the day room and provide "soap bombs," floor cleaner pods for the mop bucket, a new mop head, a broom and dust pan, and a new trash bag. *Id.* If

anything is forgotten, an inmate is supposed to report it to shift command, but opportunities to do so are limited. *Id.*

As a pretrial detainee, Ogle's claims are governed by the Fourteenth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The Fourteenth Amendment "prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017). With regard to conditions specifically, inmates must be provided with "the minimal civilized measure of life's necessities," which includes "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). In determining whether a challenged condition is reasonable or whether it amounts to punishment, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020).

Here, Ogle complains about the deficient cleaning procedures, but he does not detail how these problems affected the actual cleanliness of the cell block. The Constitution doesn't require daily cleaning, but neither does it permit no cleaning. The constitutional standard is somewhere in the middle, and this complaint contains no information to determine where on the spectrum Ogle's allegations lie. Similarly, he complains of water shutdowns, but does not say how frequently they occur or for how long. Nor does he give details about the amount of space available in the day room or explain how much time is spent there. And, the alleged code violations, without more, do not state a constitutional claim. *See French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) ("There is no question that fire and occupational safety are legitimate concerns

under the eighth amendment. However, not every deviation from ideally safe

conditions constitutes a violation of the constitution. The eighth amendment does not

constitutionalize the Indiana Fire Code. Nor does it require complete compliance with

the numerous OSHA regulations." (quotation marks and citations omitted)).

A complaint must contain sufficient factual matter to "state a claim that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A] plaintiff must do better than

putting a few words on paper that, in the hands of an imaginative reader, *might* suggest

that something has happened to her that *might* be redressed by the law." *Swanson v.

Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

In addition, Ogle does not provide a basis to hold each of the defendants he

names liable for any constitutional violation. He sues fifteen defendants in their

individual and official capacities: former Allen County Sheriff David Gladieux, current

Allen County Sheriff Troy Hershberger, former Jail Command Alan Cook, current Jail

Command David Butler, Jail Commander Mark Sickafoose, Lieutenant Sanderson,

Corporal Thomas, Shift Command Wakasey, Shift Command Dunning, Shift Command

Kauffman, Shift Command Buwlby, Shift Command Adam Butler, Shift Command Rich

Wine, Allen County Jail Maintenance Crew, and Jail Command Chief Deputy Grant.

But he does not mention any of them in the body of his complaint. Instead, he says

generally that he "would constantly warn C.O.'s and ask for cleaning supplies or

reports to be made," ECF 18 at 2, or that he "sent shift command complaints," ECF 18 at

4.

In order to hold a defendant individually liable under § 1983, that defendant

must have some personal involvement in the alleged constitutional violation. *See Palmer*

*v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). A pretrial detainee states a valid

Fourteenth Amendment claim against an individual defendant by alleging that (1) the

defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the

defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A

jail official's response to serious conditions of confinement is objectively unreasonable

when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or

is 'excessive in relation to that purpose.'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir.

2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Of note, "negligent

conduct does not offend the Due Process Clause," and thus allegations of negligence,

even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d

at 353.

There is no indication in the complaint whether Ogle personally interacted with

each of these defendants about the problems he saw, or whether he simply listed all the

jail employees he could remember. Additionally, many of the defendants, such as the

Sheriff, are high up in the chain of command; they cannot be held liable based solely on

the actions of the people they supervise. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir.

2009). "The assumption . . . that anyone who knows or should have known of [the

constitutional violation], and everyone higher up the bureaucratic chain, must be

5

liable—is a bad one. Section 1983 does not establish a system of vicarious responsibility." *Id.* at 593. For a supervisor, personal involvement could be found if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). With fifteen defendants of such varying job duties at the jail, Ogle must provide more information about why each could be liable.

Turning to a potential official capacity claim, a claim against a defendant in his official capacity is the same as a claim against the office of which he is an agent. *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 974 n.1 (7th Cir. 2000). For jail employees, an official capacity suit is one against the Allen County Sheriff's Department. *Id.* Such a claim falls under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), and requires Ogle to show that he was deprived of a federal right by an official jail policy, custom, or practice. *Miranda*, 900 F.3d at 344. This requires more than individual employees not doing their jobs. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (noting importance of "distinguish[ing] between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices"). One way to allege a viable *Monell* policy claim is for a plaintiff to identify an official policy or custom that caused him injury. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). If, instead, he is pursuing an official custom or practice theory, he "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Here, Ogle does not clearly identify an official policy,

6

custom, or practice behind the conditions he complains of in the Hole and in the segregation units.

This complaint does not state a claim for which relief can be granted. If Ogle believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Vuyani Isaiah Ogle until **March 27, 2024**, to file an amended complaint; and

(2) CAUTIONS Vuyani Isaiah Ogle if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on February 21, 2024.

s/Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT